UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

VALERIE BOHANNAN,

                                                            Plaintiff,

                  v.                                         5:04-CV-150
                                                                     (FJS/GJD)

WAL-MART BENEFITS DEPT. ENROLLMENT
TEAM,

                                                         Defendant.

_____

**APPEARANCES**                                      **OF COUNSEL**

**VALERIE BOHANNAN**
Elbridge, New York 13060
Plaintiff *pro se*

**BLITMAN & KING LLP**                    **DANIEL R. BRICE, ESQ.**
443 North Franklin Street
Suite 300
Syracuse, New York 13204
Attorneys for Plaintiff[1]

**DEVORSETZ STINZIANO GILBERTH**      **TIMOTHY J. LAMBRECHT, ESQ.**
**HEINTZ & SMITH, P.C.**
555 East Genesee Street
Syracuse, New York 13202
Attorneys for Defendant

**LAWRENCE & RUSSELL, LLP**           **JOHN M. RUSSELL, ESQ.**
5050 Poplar Avenue
Suite 1717
Memphis, Tennessee 38157
Attorneys for Defendant

---

[1] On February 8, 2005, Magistrate Judge DiBianco appointed Blitman & King LLP for the limited purpose of assisting Plaintiff with filing an appropriate response to Defendant's summary judgment motion. *See* Dkt. No. 16.

**SCULLIN, Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Although Plaintiff's complaint does not identify the legal basis for her cause of action, she appears to rely upon 29 U.S.C. § 1132 ("ERISA"). She alleges that Defendant continued to include her daughter on her family insurance plan ("Plan") and make the concomitant deductions from her paychecks after she gave Defendant proper notice to remove her daughter from the Plan.

Currently before the Court is Defendant's motion for summary judgment.

### II. BACKGROUND

Plaintiff was, at all times relevant to this action, a covered person under the Plan. *See* Plaintiff's Response to Defendant's Statement of Material Facts at ¶ 1. The Plan provides that "[i]f you do not change your benefits selection during the annual Open Enrollment period your selections from this year will continue next year." *See* Dkt. No. 28 at 10. It further provides that

> [c]hanges to your Medical, Dental . . . coverage can be made
> - during the annual Open Enrollment period each year . . .
> - with a valid status change as defined by Federal law, (See "Status Changes" later in this Section for further details.)
>
> \* \* \*

*See id.* at 10. Under the heading "Status Change Events," the Plan provides that

> You may change coverage for the balance of the calendar year if one of the following events occurs and your benefits change is consistent with the event. . . .

\* \* \*

- Events that change the number of your dependents, such as birth, adoption, placement for adoption, or death of a dependent.

\* \* \*

- An event that causes your dependent to satisfy or no longer satisfy the requirements for coverage, such as attainment of age (for instance, turning 19 years old), a change in student status, or other similar circumstances.

*See id.* at 14.

Plaintiff's daughter, Jessica L. Bohannan, was born on June 14, 1985. *See* Plaintiff's Response to Defendant's Statement of Material Facts at ¶ 2. Plaintiff states that, in January 2002, she contacted Defendant and asked it to remove Jessica from her medical and dental coverage.[2] *See* Affidavit of Valerie J. Bohannan, sworn to April 5, 2005 ("Plaintiff Aff."), at ¶ 6. She asserts that Defendant told her that, in order for her to remove Jessica from her coverage, Jessica would have to be eighteen years of age and out of school, and Plaintiff would have to wait for the October open enrollment period. *See id.*

On August 13, 2002, Plaintiff executed a document that is styled a "Guardianship Authorization." *See id.* at Exhibit "A." This document purports to transfer guardianship of Jessica from Plaintiff to Jessica's sister, Melissa M. Carmona. *See id.* The material portions of the document state:

> NOW, VALERIE J. BOHANNAN, by executing this document does hereby transfer and convey to MELISSA M. CARMONA full authority, consent and permission to have physical custody of JESSICA L.

---

[2] Defendant has not addressed the statements that Plaintiff made in her affidavit, and Plaintiff did not include them in her Statement of Material Facts. However, they are affidavit statements that comply with Rule 56(e) of the Federal Rules of Civil Procedure.

> BOHANNAN (dob 06/14/85), and
> I do also hereby give and empower MELISSA M. CARMONA with full authority to obtain such medical treatment as she deems necessary for the care and treatment of JESSICA L. BOHANNAN, and
> I do also hereby give and empower MELISSA M. CARMONA with full authority to enroll JESSICA L. BOHANNAN, in whatever educational program she reasonably deems necessary to meet the educational needs of my said child.

*See id.* Plaintiff states that, in October 2002, she made Defendant aware that Jessica was no longer in her custody and care but that she continued coverage of Jessica in the belief that she had to do so until Jessica turned eighteen. *See id.* at ¶ 8.

Plaintiff states that, in June 2003, she requested that Defendant remove Jessica from her coverage because Jessica had turned eighteen and was out of school. *See id.* at ¶ 9. She asserts that Defendant told her that she would have to wait until the October open enrollment period. *See id.*

At this point, the parties accounts' sharply diverge. Plaintiff states that, during the 2003 open enrollment period, she requested, electronically with the help of Wal-Mart Personnel Assistant Patty Selva and in writing, that Defendant remove Jessica from her coverage. *See id.* at ¶ 10. She asserts that she failed to save a copy of her written request and that Defendant claims that it discarded its copy. *See id.* She states that Defendant refused her request and sent her a benefits form in November 2003 that indicated that she was still enrolled under the "Associate + Children" option. *See id.* at ¶ 11. She asserts that, in January 2004, she contacted Defendant to remedy this situation. *See id.* at ¶ 13. She alleges that Defendant told her that she would have to submit emancipation papers to prove that Jessica was no longer her dependent. *See id.* She states that her then-attorney informed Defendant that New York no longer executes emancipation

papers. *See id.* She asserts that Defendant still insisted that emancipation papers were required and rejected her submission of the "Guardianship Authorization" as an inadequate substitute for emancipation papers.

Defendant, however, states that, during the October 2003 open enrollment period, Plaintiff did not request that Jessica be removed from her coverage but, instead, confirmed the continued coverage of Jessica in November 2003 by signing a Benefits Selection statement. *See* Affidavit of Jeffrey Sainsbury, sworn to November 12, 2004, at ¶ 7. Defendant has submitted an Associate Benefits Selection Statement that Plaintiff signed on November 6, 2003, and that indicates that her medical and dental coverage is "Associate + Children." *See id.* at Exhibit "1." Defendant further asserts that, in January 2004, it advised Plaintiff that it had denied her request to remove Jessica from her coverage because she still possessed parental rights. *See id.* at ¶ 11. Defendant finally states that, on June 14, 2004, upon Jessica's nineteenth birthday, it removed her from Plaintiff's coverage. *See id.* at ¶ 12.

### III. DISCUSSION

**A.     Standard of review**

A court may grant summary judgment when the moving party carries its burden of showing the absence of a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c). In making this determination, the court must resolve all ambiguities and draw all reasonable inferences in a light most favorable to the non-moving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted). If the moving party has met its burden, the nonmoving party may not rely upon his pleadings but must come forward with specific facts showing that there is a

genuine issue for trial. *See* Fed. R. Civ. P. 56(e).

**B.     Nature of Plaintiff's claim**

As the Court noted above, Plaintiff's complaint does not specify the legal basis for her claim. However, from Plaintiff's subsequent submissions, it appears that she relies upon 29 U.S.C. § 1132(a)(1)(B), (2), (3).[3] As an initial matter, the Court must address the issues of

---

[3] 29 U.S.C. § 1132(a) provides, in pertinent part, that

> A civil action may be brought—
>    (1) by a participant or beneficiary—
>
> * * *
>
>    (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
>    (2) by the Secretary, or by a participant or fiduciary for appropriate relief under section 1109 of this title;
>    (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;
>
> * * *

29 U.S.C. § 1132(a). 29 U.S.C. § 1109 provides, in pertinent part, that

> (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. . . .

(continued...)

whether Plaintiff has standing to assert a claim under these provisions and whether these provisions provide the form of relief that she seeks.

### 1. 29 U.S.C. § 1132(a)(1)(B)

Section 1132(a)(1)(B) has three aspects. Plaintiff has indicated that she is seeking to recover under the second aspect: "to enforce [her] rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *see* Plaintiff's Memorandum of Law at 9. However, she has not specified the Plan right or rights that she is seeking to enforce. Accordingly, the Court grants Defendant's motion for summary judgment with respect to Plaintiff's § 1132(a)(1)(B) claim.

### 2. 29 U.S.C. § 1132(a)(2)

Section 1132(a)(2) provides a beneficiary with a cause of action for breaches of fiduciary duty. However, § 1132(a)(2) incorporates § 1109, which only applies to a breach of "any of the responsibilities, obligations, or duties imposed upon fiduciaries *by this subchapter* . . . ." 29 U.S.C. § 1109 (emphasis added). Plaintiff has not identified any responsibility, obligation, or duty that ERISA creates that she believes Defendant breached. Furthermore, even if she could identify such a breach, Plaintiff cannot recover under § 1132(a)(2) because she is "seeking damages on [her] own behalf, not on behalf of the Plan." *Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993). Accordingly, the Court grants Defendant's motion for summary judgment with respect to Plaintiff's § 1132(a)(2) claim.

---

[3](...continued)

\* \* \*

29 U.S.C. § 1109.

### *3. 29 U.S.C. § 1132(a)(3)*

Section 1132(a)(3) provides for injunctive relief and "other appropriate equitable relief . . . ." 29 U.S.C. § 1132(a)(3). Plaintiff's complaint seeks "to have Jessica off the insurance and to [reimburse] all money due. . . ." *See* Dkt. No. 1 at ¶ 7. Defendant removed Plaintiff's daughter from the Plan when she turned nineteen years of age on June 9, 2004. *See* Defendant's Statement of Material Facts at ¶ 10. Therefore, the only relief that Plaintiff still seeks is the recovery of the premium payments that she alleges Defendant wrongly withheld.

The question then arises whether the recovery of wrongly withheld premium payments qualifies as "other appropriate equitable relief . . . ." 29 U.S.C. § 1132(a)(3). The leading case on the meaning of this phrase is *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002). In that case, the Court noted that "'"[e]quitable" relief must mean *something* less than *all* relief.'" *Id.* at 209 (quotation omitted). Accordingly, the Court followed its previous holding "that the term 'equitable relief' in § 502(a)(3) must refer to 'those categories of relief that were *typically* available in equity . . . ." *Id.* at 210 (quotation omitted). The Court went on to note that

> "[a]lmost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damage,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." . . . . And "[m]oney damages are, of course, the classic form of *legal* relief." . . . .

*Id.* (internal quotations omitted).

Following these general observations, the Court proceeded to consider various circumstances under which equitable relief could include a monetary award. The only circumstance that the Court considered that is potentially applicable to the present case is that in

-8-

which a plaintiff seeks restitution. The Court noted that "'restitution is a legal remedy when ordered in a case at law and an equitable remedy . . . when ordered in an equity case,' and whether it is legal or equitable depends on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought." *Id.* at 213 (quotation omitted). The Court went on to consider when restitution was available at equity:

> a plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where [1] money or property identified as belonging in good conscience to the plaintiff [2] could clearly be traced to particular funds or property [3] in the defendant's possession. .
> . . . A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where "the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor," and the plaintiff "cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]."

*Id.* 213-14 (quotations and other internal citations omitted).

In the instant case, there is a genuine issue as to whether Plaintiff made a proper request for a change of coverage during the October 2003 open enrollment period.[4] However, Defendant

---

[4] The Court finds that Plaintiff's other requests were improper under the Plan. The "Guardianship Authorization" on its face does not transfer all parental rights. *See* Plaintiff Aff. at Exhibit "1." Furthermore, it appears that, under New York law, guardianship can only be transferred upon the death of a guardian or upon a petition for the appointment of a guardian. *See* N.Y. Surrogate's Court Procedure Act §§ 1703, 1710 (McKinney 2005).

Insofar as Plaintiff contends that Jessica was emancipated before June 2004, "[t]he burden of proof as to emancipation is on the one asserting it." *Gittleman v. Gittleman*, 81 A.D.2d 632, 633 (2d Dep't 1981) (citation omitted). "Children are emancipated if they become economically independent of their parents through employment, entry into military service, or marriage, and may also be deemed constructively emancipated if, without cause, they withdraw from parental control and supervision . . . . *Matter of Alice C. v. Bernard G.C.*, 193 A.D.2d 97, 104 (2d Dep't 1993) (citations omitted). Plaintiff states that "[a]fter August 13, 2002, Jessica
(continued...)

would still be entitled to summary judgment if, despite Plaintiff's proper request, Defendant is entitled even under those circumstances to judgment as a matter of law. Assuming for purposes of this motion only that Defendant wrongly failed to acknowledge Plaintiff's request for a change in her coverage, the question arises whether the recovery which she seeks satisfies the three elements that *Knudson* indicates constitute a claim for equitable restitution. To answer this question, the Court will follow the *Knudson*'s recommendation to consult the Restatement of Restitution and treatises. *See id.* at 217.

If Defendant wrongly failed to accept Plaintiff's request for a change of coverage, she is rightly entitled to the difference between the premiums that she actually paid and those that she would have paid had Defendant accepted her request. "Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises." Restatement (First) of Restitution ("First Restatement") § 160 (1937).[5,6] It thus appears that, unless restitution of the

---

[4](...continued)
resided with Melissa M. Carmona who thereafter provided the majority of support for Jessica." *See* Plaintiff Aff. at ¶ 7. She further asserts that Ms. Carmona "assumed full legal authority for the care and custody of Jessica." *See* Plaintiff's Statement of Material Facts at ¶ 12. Finally, she alleges that "Jessica refuses to live at home." *See* Dkt. No. 1 at ¶ 5. Even if Plaintiff's assertions are true and sufficient to show Jessica's emancipation, it does not appear that she provided Defendant with anything other than the "Guardianship Authorization" and her statements that Jessica was no longer in her custody and control. More problematic for Plaintiff's claim is the fact that she had to file a status change form within sixty days after the qualifying event. *See* Dkt. No. 11 at Pt. 6 at Exhibit "3." According to Plaintiff, Jessica was emancipated no later than August 13, 2002. *See* Plaintiff Aff. at ¶ 7. However, she does not claim that she sought to change her coverage because of the status change until June 2003. *See id.* at ¶ 9.

[5] "The *Restatement (Third) of Restitution and Unjust Enrichment* . . . (there was no completed *Second*) is still only in draft form." *Greenwald v. Chase Manhattan Mortgage Corp.*, 241 F.3d 76, 79 n.3 (1st Cir. 2001). The Supreme Court cited the First Restatement in *Knudson*.
(continued...)

difference in premium is made, Defendant will be unjustly enriched by its failure to accept Plaintiff's request for a change in coverage. *See* First Restatement § 3 ("A person is not permitted to profit by his own wrong at the expense of another.").

The next question is whether the funds to which Plaintiff is presumably entitled are particular funds in Defendant's possession. The First Restatement states that

> [w]here a person wrongfully mingles money of another with money of his own and makes withdrawals from the mingled fund and dissipates the money so withdrawn, and subsequently adds money of his own to the fund, the other can enforce an equitable lien upon the fund only for the amount of the lowest intermediate balance, unless
> (a) the fund or a part of it earns a profit, or
>
> (b) the subsequent additions were made by way of restitution.

First Restatement § 212. Section 212 helpfully clarifies the meaning of "particular funds" in *Knudson*. It is not necessary that the precise items of currency be identifiable, which, in electronic transactions, would never be possible. Rather, if Plaintiff can identify a fund in Defendant's possession into which it placed her premiums, she can recover monies which rightfully belong to her out of that fund subject to the limitations § 212, which only apply if the fund has at any time been depleted below the amount that rightfully belongs to her.

Since Defendant hastily moved to the conclusion that *Knudson* barred Plaintiff's claim and because Plaintiff responded to *Knudson* by placing her primary reliance upon 29 U.S.C.

---

[5](...continued)
*See Knudson*, 534 U.S. at 213, 214.

[6] The First Restatement is arranged in two parts. Part I is titled "The Right to Restitution (Quasi Contracts And Kindred Equitable Relief)" and is comprised of §§ 1-158. Part II is entitled "Constructive Trusts And Analogous Equitable Remedies" and is comprised of §§ 160-215. The Court's discussion in *Knudson* implies that Part I and Part II involve legal and equitable restitution respectively. *See Knudson*, 534 U.S. at 213.

§ 1132(a)(1)(B), (2), neither party has developed the record with respect to what Defendant did with Plaintiff's premium payments. However, it seems unlikely that the account into which Defendant placed those payments has ever been diminished below the amount of funds that Plaintiff seeks to recover. Accordingly, since there are genuine issues with respect to whether Plaintiff made a request for a change of coverage during the October 2003 open enrollment period and with respect to what Defendant did with her premium payments, the Court denies Defendant's motion for summary judgment with respect to Plaintiff's § 1132(a)(3) claim.

## IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendant's motion for summary judgment is **GRANTED** with respect to Plaintiff's 29 U.S.C. § 1132(a)(1)(B), (2) claims; and the Court further

**ORDERS** that Defendant's motion for summary judgment is **DENIED** with respect to Plaintiff's 29 U.S.C. § 1132(a)(3) claim; and the Court further

**ORDERS** that the parties contact Magistrate Judge DiBianco's chambers within **ten (10)** days of the date of this Memorandum-Decision and Order to schedule a settlement conference.

**IT IS SO ORDERED.**

Dated: June 20, 2005
      Syracuse, New York

_____
Frederick J. Scullin, Jr.
Chief United States District Court Judge